# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER N. WASHINGTON, | CASE NO. 1:09-cv-01666-AWI-SKO PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION TO DISMISS BE (1) DENIED ON THE GROUND THAT PLAINTIFF FAILS TO STATE A CLAIM AND (2) GRANTED ON THE GROUND OF QUALIFIED IMMUNITY |
| v. | |
| DERRAL G. ADAMS, | |
| Defendant. | |
| | (Doc. 38) |
| | THIRTY-DAY OBJECTION DEADLINE |

**Findings and Recommendations Addressing Defendant's Motion to Dismiss**

### I.   Procedural History

Plaintiff Christopher N. Washington, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on September 21, 2009. This action for damages is proceeding on Plaintiff's second amended complaint, filed on March 24, 2011, against Defendant Adams for violation of the Free Exercise Clause of the First Amendment of the United States Constitution. Defendant was Warden of California State Prison-Corcoran (CSP-Corcoran) during the relevant time period, and Plaintiff's claim arises from Defendant's denial of his written request for a religion-based legal name change.

On August 24, 2011, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Adams filed a motion to dismiss on the grounds that Plaintiff fails to state a claim upon which relief may be granted and that Defendant is entitled to qualified immunity. Plaintiff filed an opposition on September 6, 2011, and Defendant filed a reply on September 19, 2011.

///

## II. Legal Standard for Motions to Dismiss

### A. Materials Properly Considered by the Court on a 12(b)(6) Motion

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Conservation Force v. Salazar, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quotation marks and citations omitted). In resolving a 12(b)(6) motion, a court's review is generally limited to the operative pleading. Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007); Schneider v. California Dept. of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). However, the court may properly consider matters subject to judicial notice and documents incorporated by reference in the pleading without converting the motion to dismiss to one for summary judgment.[1] U.S. v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

Here, Defendant requests judicial notice of the abstract of judgment for Plaintiff, and Defendant submits the letter denying Plaintiff's request for a religion-based legal name change and the second-level response denying Plaintiff's appeal of Defendant's action. (Doc. 38, Def. Motion, Ex. A & B.) The Court may take judicial notice of court records and therefore, Defendant's request for judicial notice is granted. United States v. 14.02 Acres of Land More or Less in Fresno County, 547 F.3d 943, 955 (9th Cir. 2008); United States v. Howard, 381 F.3d 873, 876, n.1 (9th Cir. 2004). Further, the documents pertaining to the denial of Plaintiff's name change request and the second-level appeal response are properly considered under the doctrine of incorporation by reference, given that Defendant's action is the basis for Plaintiff's claim and Plaintiff attached some but not all of the documents relating to his inmate appeal. Ritchie, 342 F.3d at 908; also Daniels-Hall, 629 F.3d at 998.

///

///

---

[1] Under the doctrine of incorporation by reference, a court may consider a document provided by the defendant which was not attached to the pleading if the plaintiff refers to the document extensively or if it forms the basis of the plaintiff's claim. Ritchie, 342 F.3d at 908; also Daniels-Hall, 629 F.3d at 998.

2

B.   **Pleading Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, __, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)) (quotation marks omitted); Conservation Force, 646 F.3d at 1242; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The Court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. Daniels-Hall, 629 F.3d at 998; Sanders, 504 F.3d at 910; Huynh, 465 F.3d at 996-97; Morales v. City of Los Angeles, 214 F.3d 1151, 1153 (9th Cir. 2000). However, while prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted), courts are not required to indulge unwarranted inferences, Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (quotation marks and citation omitted).

**III.   Cognizability of Plaintiff's Free Exercise Claim**

A.   **Allegations**

Plaintiff alleges that while he was incarcerated at CSP-Corcoran, he sought to add El-Bey, a religious name, to his commitment name so that he would be identified as Christopher N. Washington-El-Bey. (Doc. 20, 2nd Amend. Comp., ¶11.) Plaintiff, who is a member of the Muslim group Moorish Science Temple of America, alleges that his religion requires him to change his name to a Muslim name, but his request for the religious name change was denied by Defendant.[2] (Id.) The denial letter, dated July 18, 2008, stated in relevant part:

> This letter is in response to your written request to change your legal name while in the custody of the Department of Corrections and Rehabilitation. You are requesting CSP-Corcoran assist you in changing your name based on religious beliefs of an ancestral nature. In your request, you state you have chosen to add the name El Bey to your existing name, therefore, being named Christopher Nathan El Bey

---

[2] Additionally, Plaintiff alleges that prison officials violated his rights by refusing to process his mail or use documents in which Plaintiff used his religious name, and they apparently refused to change their own documents to use Plaintiff's religious name. Because this action is only proceeding against Defendant Adams and he is linked only to denying Plaintiff's written request for a religion-based legal name change, through the addition of El-Bey to his name, the Court addresses only that claim.

3

1    Washington as your desired legal name change.

2    Your Central File was reviewed by Correctional Counselor II Specialist, N. Stowe,
     who determined, based on your violent commitment offenses, it would not be in the
3    prison's best interest to change your name. Furthermore, CSP-Corcoran cannot
     support your legal name change for reasons pertaining to institutional safety and
4    security as well as registration and notification mandates. Therefore, your request is
     denied at this time. However, you may contact the courts as an individual to pursue
5    a name change.

6  (Def. Motion, Ex. B.)

7       **B.     Parties' Positions**

8       Defendant argues that he is entitled to dismissal for failure to state a claim because he did

9  not prevent Plaintiff from legally changing his name, and that Plaintiff does not have a constitutional

10 right to use his religious name in correspondence unless he first changes his name legally.

11      Plaintiff responds that Defendant violated his rights by completely denying his request for

12 a name change, and that there was an alternative that would allow Plaintiff to use his religious name

13 and the prison to maintain its safety and security, which was the use of "aka." (Doc. 40, Opp., 3:2-

14 7.) Plaintiff further argues that Defendant refused to grant his request to add the suffix El-Bey to his

15 name, and that he requested only the addition of two words to his name rather than a complete name

16 change or a change to a different name. (Id., 4:5-6 & 26-28.)

17      In reply, Defendant reiterates that he did not have the legal authority to approve a legal name

18 change and he did not deny Plaintiff's ability to petition the court for a name change.

19      **C.     Discussion**

20          **1.     Procedure for Obtaining a Legal Name Change**

21      Defendant's arguments that he did not have the authority to approve a legal name change for

22 Plaintiff and that it is the court who determines whether a sex offender will be permitted a name

23 change are not supported by the Court's reading of the applicable code section and regulation.[3]

24      In California, Plaintiff, as a state prisoner, may not petition the court to legally change his

25 name unless he is first permitted to do so by the Director of Corrections. Cal. Civ. Proc. § 1279.5(b).

26 The process for obtaining permission from the Director of Corrections requires prisoners to first

27

28      [3] Plaintiff's commitment offenses include sex offenses. (Def. Ex. A.)

4

request a legal name change from the Warden. Cal. Code Regs., tit. 15, § 3294.5(a). If the request is denied, the Warden shall provide the reason(s) for the denial and the process ends. Tit. 15, § 3294.5(b). If approval of the request is recommended, the Warden shall forward the request to the Institutions Division Regional Administrator. Tit. 15, § 3294.5(c). If the Institutions Division Regional Administrator agrees with the approval recommendation, a letter is sent to the court explaining the reasons for approval of the name change by the Department of Corrections. Tit. 15, § 3294.5(e). Final approval is then in the hands of the court. Proc. § 1279.5(b),(d); Tit. 15, § 3294.5(g).

In Plaintiff's case, due to his commitment offense, he faces an additional restriction in that "a court shall deny a petition for a name change pursuant to Section 1276 made by a person who is required to register as a sex offender under Section 290 of the Penal Code, unless the court determines that it is in the best interest of justice to grant the petition and that doing so will not adversely affect the public safety." Proc. § 1279.5(d). However, Plaintiff must first obtain permission from the Director of Corrections before he can petition for an exception to the general prohibition set forth in section 1279.5(d). Indeed, the relevant regulation provides that "if a court ordered name change is received without departmental approval, this clearly indicates that the inmate/parolee has not followed the proper procedure to legally change his/her name," and "the warden or regional parole administrator shall notify the issuing court in writing that the name change cannot legally be changed without the Secretary's approval pursuant to the Code of Civil Procedure, Section 1279.5." Tit. 15, § 3294.5(b).

Thus, Defendant not only had the authority to approve Plaintiff's request for a legal name change, but his denial of that request at the first step effectively ended Plaintiff's ability to pursue further a legal name change, at least while at CSP-Corcoran.[4] Proc. § 1279.5(b); tit. 15, § 3294.5(b).

### 2.     **Sufficiency of Plaintiff's Allegations**

Turning to Plaintiff's allegations, inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion. O'Lone

---

[4] Plaintiff is currently incarcerated at Correctional Training Facility in Soledad.

5

1  v. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct. 2400 (1987) (quotation marks omitted); Shakur
2  v. Schriro, 514 F.3d 878, 884-85 (9th Cir. 2008).  The protection of the Free Exercise Clause is
3  triggered when prison officials substantially burden the practice of an inmate's religion by preventing
4  him from engaging in conduct which he sincerely believes is consistent with his faith.  Shakur, 514
5  F.3d at 884-85.  However, because lawful incarceration brings about the necessary withdrawal or
6  limitation of many privileges and rights, Shakur, 514 F.3d at 884 (citing O'Lone, 482 U.S. at 348)
7  (quotation marks omitted), any impingement on an inmate's constitutional rights is valid if it is
8  reasonably related to a legitimate penological interest, id. (citing Turner v. Safley, 482 U.S. 78, 89,
9  107 S.Ct. 2254 (1987)) (quotation marks omitted).

10  Plaintiff alleges that his religion mandates he select a Muslim name and incorporate it into
11  his legal/committed name, and the Court can discern no basis for finding, at the pleading stage, that
12  his desire for a religion-based name change does *not* implicate the Free Exercise Clause.  See
13  Shakur, 514 F.3d at 886 ("Given his sincere belief that he is personally required to consume kosher
14  meat to maintain his spirituality, we are satisfied, as a threshold matter, that the prison's refusal to
15  provide a kosher diet implicates the Free Exercise Clause.")  The Ninth Circuit has recognized "that
16  the adoption of Muslim names by converts to the Islamic faith is an exercise of religious freedom,"
17  Malik v. Brown, 16 F.3d 330, 333 (9th Cir. 1994) (Malik I), and to state a free exercise claim,
18  Plaintiff need only allege a sincerely held belief, religious in nature, Malik, 16 F.3d at 333; Shakur,
19  514 F.3d at 885.  Plaintiff has done so.

20  Although Defendant cites to Malik v. Brown, 71 F.3d 724, 727-28 (9th Cir. 1995) (Malik III)
21  in support of his argument that Plaintiff does not have a constitutionally protected right to use a
22  religious name unless he first changes his name legally, the Court does not interpret Malik III as
23  making that finding as a matter of law, and furthermore, there is a critical distinction between the
24  two cases.

25  In Malik III, the Ninth Circuit identified three propositions consistently supported by case
26  law: (1) inmates have a First Amendment interest in using their religious names, (2) inmates cannot
27  compel prisons to reorganize their filing systems to reflect their new names, and (3) in states where
28  inmates are allowed to change their names legally, prisons are generally required to recognize only

6

legally changed names. Malik, 71 F.3d at 727-28. However, the Ninth Circuit was determining whether prison officials were entitled to qualified immunity on the plaintiff's First Amendment claim that he had the right to use his legal religious name in conjunction with his committed name on outgoing mail, and it identified those propositions in the course of reviewing whether the law was clearly established. Malik, 71 F.3d at 727-28.

The Court did not hold that, as a matter of law, inmates do not have any protected First Amendment interest in the use of religious names in the absence of a legal name change. Further, Plaintiff is not in the same position as an inmate who could change his name legally but did not do so. Plaintiff may only seek a legal name change from the court if he first obtains permission from the Director of Corrections, and Defendant's denial of his request foreclosed his ability to do so. Therefore, the Court declines to dismiss Plaintiff's claim on the ground that as a matter of law, he has no protected interest in his non-legal religious name.

This is not to say that Plaintiff would prevail on his claim. At the pleading stage, the Court cannot determine whether the alleged infringement into the protected right at issue was reasonably related to a penological purpose. Barrett v. Belleque, 544 F.3d 1060, 1062 (9th Cir. 2008) (questions going to the merits of First Amendment claim not appropriately resolved on the pleadings). As such, the Court is not in the position to find that Defendant's denial of Plaintiff's request for a religion-based legal name change violated Plaintiff's First Amendment rights and it is not doing so. Rather, the Court finds only that viewed in the light most favorable to Plaintiff, he has alleged facts sufficient to support a claim for violation of the Free Exercise Clause of the First Amendment.

### IV.    Qualified Immunity

####    A.    Legal Standard

Defendant also argues that he is entitled to qualified immunity, which shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties

7

reasonably," Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

In resolving a claim of qualified immunity, courts must determine whether, taken in the light most favorable to the plaintiff, the defendant's conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001); Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009). While often beneficial to address in that order, courts have discretion to address the two-step inquiry in the order they deem most suitable under the circumstances. Pearson, 555 U.S. at 236, 129 S.Ct. at 818 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

The Court has already determined that Plaintiff's allegations are sufficient to state a claim against Defendant for violation of the First Amendment, but at the pleading stage, the Court cannot determine whether the alleged infringement violated Plaintiff's rights, as that requires reaching into the merits and determining, based on evidence submitted, whether the action at issue was reasonably related to a legitimate penological purpose. No constitutional violation occurred if the action was reasonably related to a legitimate penological purpose. Therefore, the Court exercises its discretion to proceed directly to the issue of whether Defendant is entitled to qualified immunity. Phillips v. Hust, 588 F.3d 652, 655 (9th Cir. 2009).

**B.     Clearly Established Right**

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515 (2002). While the reasonableness inquiry may not be undertaken as a broad, general proposition, neither is official action entitled to protection "unless the very action in question has previously been held unlawful." Hope, 536 U.S. at 739. "Specificity only requires that the unlawfulness be apparent under preexisting law," Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances," Hope, 536 U.S. at 741. The

salient question is whether the state of the law as of July 2008 gave Defendant fair warning that his decision to deny Plaintiff's request for a legal name change for religious reasons was unconstitutional. Hope, 536 U.S. at 741 (quotation marks omitted).

   In 2008, it was clearly established, as a broad general proposition, that prisoners retain the protections of the Free Exercise Clause, May v. Baldwin, 109 F.3d 557, 561 (9th Cir. 1997) (citing O'Lone, 482 U.S. at 348), and in Malik III, the Ninth Circuit noted the proposition that in states permitting prisoners to legally change their names, prison officials are generally required to recognize only legally changed names, Malik, 71 F.3d at 727-28 (citing Rahman v. Stephenson, 626 F.Supp. 886, 888 (W.D.Tenn. 1986) (holding that "[a] prisoner who has adopted a new name, for religious or any other reasons, but has not legally changed his name, cannot sustain a claim that his right to religious freedom is violated when prison officials fails to recognize his new name") and Salahuddin v. Coughlin, 591 F.Supp. 353, 359 (S.D.N.Y. 1984) (where the prison recognized statutory name changes, a common-law name change, even for religious purposes, was a right lost as inconsistent with incarceration)). Subsequently, courts have continued to address the issue of recognition of legally-changed religious names in conjunction with commitment names. The Court has found numerous cases supporting the proposition that prison officials are required to recognize and/or accommodate inmates' legal religious name changes, e.g., Rouse v. Vail, No. 08-5620 FDB/JRC, 2010 WL 1536717, at *4 (W.D.Wash. 2010), report and recommendation adopted by 2010 WL 1536719 (2010); Fleming v. Flenagle, No. 09-5681 FDB, 2010 WL 152101, at *2 (W.D.Wash. 2010); Babcock v. Clarke, No. CV-07-5073-FVS, 2009 WL 911214, at *2-6 (E.D.Wash. 2009); Al-Hizbullashi v. Bleisner, No. C 04-4903 MMC (PR), 2008 WL 1859068, at *3 (N.D.Cal. 2008); Marks v. Garman, 2008 WL 3540177, at *5 (W.D.Wash. 2008); Ashanti v. CA Dep't of Corrections, No. CIV S-03-0474 LKK GGH P, 2007 WL 520958, at *10-16 (E.D.Cal. 2007), findings and recommendations adopted by 2007 WL 520958 (2007); Hashim v. Litscher, No. 01-C-266-C, 2001 WL 34379618, at *5-6 (W.D.Wis. 2001); Tiggs v. Berge, No. 01-C-171-C, 2001 WL 34377567, at *19-20 (W.D.Wis. 2001); Hakim v. Hicks, 223 F.3d 1244, 1248 (11th 2000); Azeez v. Fairman, 795 F.2d 1296, 1301-02 (7th Cir. 1986); see also Miller v. Wilkinson, No. 2:98-cv-275, 2010 WL 3909119, at *11-13 (S.D.Ohio 2010) (upholding prison officials' refusal to

9

1 recognize common-law name changes under RLUIPA (Religious Land Use and Institutionalized
2 Persons Act)), but the Court has found none holding that prison officials are required to recognize
3 and/or accommodate common-law name changes.

4      Here, Defendant has raised qualified immunity on a motion to dismiss. The Court is
5 cognizant both that qualified immunity is immunity from suit and it should be resolved at the earliest
6 stage possible, Pearson, 555 U.S. at 231-32, and that resolving qualified immunity on the pleadings
7 and without the benefit of a developed factual record can be difficult at best, id. at 238-39. In
8 attempting to properly frame Plaintiff's claim to determine entitlement to qualified immunity, the
9 Court is limited to the second amended complaint, the exhibits attached by Plaintiff, and the exhibits
10 submitted by Defendant pursuant to the doctrine of incorporation by reference.

11      Neither party provided a copy of Plaintiff's written request to Defendant, and its contents are
12 not alleged in the second amended complaint. Defendant's written response suggests that Plaintiff
13 requested a legal name change so that he could be identified by his religious name, Christopher
14 Washington-El-Bey. While Plaintiff later requested via the inmate appeals process that his name
15 change request be granted with the understanding and agreement that he would use both his
16 committed name and his religious name in his letters, business dealings, and social affairs, there is
17 no indication in the record that his request to Defendant was anything other than a request for a legal
18 name change to his chosen religious name. (2nd Amend. Comp., p. 9.) Defendant then denied the
19 request based on Plaintiff's violent commitment offense, institutional safety and security concerns,
20 and registration and notification mandates.

21      The Court located two other cases in which inmates alleged free exercise claims based on the
22 denial of their name change requests by prison officials, and both cases involved California
23 prisoners. In Kemp v. Woodford, an inmate brought suit against prison officials for denying his
24 request to legally change his name for religious reasons. Kemp v. Woodford, No. CIV S-06-2558
25 LKK GGH, 2007 WL 3274381, at *2 (E.D.Cal. Nov. 5, 2007), findings and recommendations
26 adopted in full, 2008 WL 544908 (E.D.Cal. Feb. 26, 2008). Although in that case the inmate was
27 affirmatively told he could use his (non-legal) religious name in conjunction with his commitment
28

1  name, he was apparently seeking not that accommodation but to use only his religious name. Id.
2  On a 12(b)(6) motion to dismiss, the court found prison officials were entitled to qualified immunity
3  on the ground that a reasonable official would have believed it was lawful to deny a legal name
4  change request but allow the use of a religious name in conjunction with a commitment name. Id.
5  at *5.

6  In the other case, Scott v. California Supreme Court, the court resolved the issue of qualified
7  immunity on a motion for summary judgment and given the procedural posture, it analyzed the claim
8  using the Turner test. Scott v. California Supreme Court, No. CIV S-04-2586 LKK GGH, 2008 WL
9  2788346, at *5 (E.D.Cal. Jul. 17, 2008), findings and recommendations adopted in full, 2008 WL
10 4200353 (E.D.Cal. Sept. 12, 2008).  The court found that because the warden addressed only the
11 issue of allowing the inmate to change his name and failed to address the accommodation of
12 allowing the inmate to use both his commitment name and his religious name, the warden violated
13 the inmate's First Amendment rights in denying the request for a legal name change. Id. at 7. The
14 court nonetheless found that the warden was entitled to qualified immunity because in 2004, the law
15 was clearly established that the religious practice at issue had to be mandated by the inmate's faith
16 and the inmate did not demonstrate that his faith even recommended much less mandated a name
17 change. Id. at *7-8 (citing Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part*
18 *by* Shakur, 514 F.3d at 884-85).[5]

19 However, in addition to the fact that the court in Scott had the benefit of a fully developed
20 record and considered whether the denial of a legal name change request was reasonably related to
21 a legitimate penological purpose, the recommendation was filed on July 17, 2008, and it did not
22 become final until September 12, 2008, which was after the decision at issue in this action.

23 As to the Kemp decision, while the Court agrees with the court's conclusion that a reasonable
24 official would have thought that denying a legal name change but offering the use of a religious
25 name in conjunction with a commitment name as an alternative was lawful, it does not

---

[5] The court noted that the objective centrality test was no longer the law, but it was in 2004. Id. at *8 n.4.

follow that anything short of affirmatively offering an accommodation in the face of a request for a legal name change is clearly unlawful.

It bears repeating that "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgment about open legal questions." Ashcroft v. al-Kidd, __ U.S. __, __, 131 S.Ct. 2074, 2085 (2011). Here, Defendant was faced not with a request for permission to use a common-law religious name along with a legal commitment name, but with a request for a legal name change based on religious beliefs. The Court finds that the pre-existing law did not give Defendant fair warning that, in the situation he confronted, it would be unlawful to deny Plaintiff's request for a religion-based legal name change, nor does it today. Accordingly, the Court finds that Defendant is entitled to qualified immunity on Plaintiff's claim arising out of the denial of his request for a legal name change.

## V.     Recommendation

For the reasons set forth herein, the Court RECOMMENDS that Defendant's motion to dismiss, filed on August 24, 2011, be DENIED on the ground that Plaintiff fails to state a claim and GRANTED on the ground of qualified immunity.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   November 28, 2011**              /s/ Sheila K. Oberto
                                            UNITED STATES MAGISTRATE JUDGE